Mr. Dix raised three points related to his issue in briefing. First, his position is that notice was lacking for the four-level enhancement that his gun possession was in connection with failure to stop for a blue light. Second, he submits that the gun in no way was possessed in connection with failure to stop for a blue light in the legal definition, and the gun did not facilitate failure to stop. And finally, even if the gun could be connected to a failure to stop for a blue light offense, there were no reasons given by the government or the district court in this case. I will first talk about the notice issue. In the PSR, the one crime was identified, and that was a grand larceny related to an alleged stolen car. Mr. Dix objected to that. The government was on notice that he would be objecting to that at his sentencing hearing. And at the sentencing hearing, when it appeared the district court would agree with Mr. Dix, the government shifted positions and said, well, there's this failure to stop for a blue light. It's called a misdemeanor in South Carolina, but it gets up to three years in prison, so we would rely on that as an alternative. So while it was raised at sentencing, unlike the notice he received in the PSR that the stolen car would be assessed, he did not have a chance to look for some evidence, find a witness, whatever, to argue about the failure to stop for a blue light. Let me ask you, is there any suggestion that evidence would show that he did not stop for a blue light? That was discussed entirely. It was in the pre-sentence report and it was in the discussion. The only aspect of it that was not discussed is that the government didn't rely on the blue light, but on the stolen car. But when the district court decided to rely on the blue light, counsel, I don't know if it's you, but counsel said, this is the first time I've heard that. But then there was a discussion and there was an argument, but I don't think there was any argument as to whether he violated the blue light, and there's no suggestion he didn't violate the blue light law. The discussion was a little bit about, there was a little discussion about whether it's a felony, whether it qualified. But the alternative is if the attorney really felt like he had more to present, he certainly could have said, I'd like to have a suspension for a day or so on this sentencing and let me go check this out. But he went and made his arguments and the court considered them. But the real question is, there really was no objection to the conduct as reported in the PSR and as related by counsel. He did violate the blue light. And the only question is whether it was now going to be used in the calculation. And he made whatever argument he could, which was basically it's a misdemeanor. And of course, as a matter of law, we know that the qualification of an offense for a felony is defined by federal law and involves a year, even exceeding a year. Well, Judge Niemeyer, I agree with almost everything you said. I disagree. I don't think his basis for argument was that it was a misdemeanor because we have this issue all the time in South Carolina. There are a lot of crimes called misdemeanors, but they get more than a year. Well, I don't know if there was a real argument about it, but there was a question brought, I remember, as to what was the available penalty. Right. I think that discussion actually was between the district court and the government, but we don't have an objection to that. And that's not an issue here. And I think the point is, is that and I tried to make this point in the briefing. It's not about whether he failed to stop for a blue light. He absolutely failed to stop for a blue light. And he admitted that from the beginning. The question was whether when he prepared for a sentencing hearing and he prepared to make an argument against one crime and then at the last minute, kind of like in the Hodge case, the position was changed. It was changed late in the game. It was changed in sentencing, but he did have a notice before the sentence was imposed. And so now the question is, what is the objection to using it? Let's say it was given to you three weeks before. What would be objection to using the blue light? Well, I'm not sure what it is. And I think counsel did the best he could at the trial court. And the point about the notice aspect, which I would agree is a closer call than perhaps in the Hodge case. But the Hodge case was no notice. Hodge case was raised for the first time in collateral review. Correct. Correct. My point on this one is the whole issue is a notice issue. And my question is, if the notice was inadequate, then it seems to me the only way we can measure whether it was inadequate is whether there is some development that could have been undertaken that wasn't. But we know the crime was committed. He admitted committing the crime. The court says, I'm going to use the blue light offense. And you say, well, he didn't have a chance to prepare. My question is, what further could be said on that regard? Well, I think I put everything in the briefing that I could think of to support the fact that, like I said, the second issue is kind of moving into the second issue. Let me just stick with this for a second because you raised a Hodge issue. And I gather at this point, you have nothing to proffer as to what further could have been investigated or prepared with respect to the use of blue light. Well, I think there was a woman who was let out of the car at some point. And he said it was a hitchhiker. But I don't know. Counsel could have looked into that to see if she was available to say what was going on in the car, if the car was visible, if he tried to use the gun or not. He admitted to not stopping in response to the blue light. Correct. But there's still... It still has to be... Not only that, he fled and admitted to facts that he drove over 100 miles an hour and then ultimately crashed the car. Well, correct. I mean, there's no... The violation is not an issue, is it? The violation of the blue light, like I said, he admitted that he failed to stop for a blue light. So that moves into the question of if the court determines there's adequate notice, which it sounds like that's the way the court's leaning, that there was adequate... I'm trying to probe how deep your argument is. You said you basically have a Hodge violation because you didn't have notice. And I'm suggesting you got pre-sentencing notice. It was late. Y'all are talking about Hodge, but we had a case since then called Benton. Are you familiar with that one? I don't think so. You're not? I don't think so. I don't think we cited that. But there, like, in my reply brief, I did point to... They need to give notice what they're relying on in the PSR. It's a four-circuit case. Harris wrote it. I was on the panel. Was it Blount? Pardon? Blount? Benton. Okay. I'm familiar with Blount. Yeah, Benton. January 24, 2022. 24th, 4th, 309. But it was a collateral proceeding. Okay. And the government argued there that Hodge was bad law. As I remember, they were arguing that Hodge was bad law. And Benton was decided. And I think the government had to distinguish Benton. Or the issue about their notice thing. And I'll say this. Hodge and Benton both are collateral attacks. And this is a direct appeal. Correct. And in my reply brief, that's where I addressed the case. This is a direct appeal, but it's after all your briefing in this case. Okay. And neither of you filed any 28-J letters. It's as if we took Benton out and threw it down the elevator track. But neither of you got anything to do with it. No, I mean, it's an oversight on my part if I missed a case that I should have filed a 28-J letter on. But again, I found some authority on direct review that appeared to rely on Hodge. And I cited that in my reply brief. Back to Judge Niemeyer's question about what kind of... Reply brief was filed before Benton came out. Right. So his argument after the notice issue is that it doesn't apply anyway because this gun was never shown to facilitate the failure of software Blue Light. The South Carolina Code of Blue Light statute is 56-5. Here's what Benton said. Just as in Hodge, the apparently intentional exclusion of some convictions left Benton without notice that the government later might use those same convictions to support an ACCA enhancement. And lacking such notice, Benton had no reason at sentencing to argue and perhaps some good reason not to argue that the overlooked convictions might qualify as separate predicate offenses. That sounds favorable. It sounds like what helps your argument, the government may distinguish it and try to distinguish it on this notice question, but that's what we got to grapple with, I think. Well, I think Hodge said something similar, which is the whole... It does. It says it's just as in Hodge as a predicate to what the Benton decision says. But that was the point about... There, the U.S. attorney said that Hodge was by law, I think. But we applied it. That was a collateral effect. And Hodge was, and Benton is, too. This is a direct appeal. Right. And so the Hodge issue about the notice, why it was important for Mr. Dix to get notice is for the same thing that was written in Hodge, that it's not going to be... In both Hodge and Benton, sentence was imposed without notice of the government's later position. In this case, the notice was given before the sentence was imposed with the opportunity to object and explain. Or if he didn't have, the counsel didn't have adequate information, he could have requested some more time or postponement or... But in this case, there was no mystery about the qualification of the blue light. It was just that the pre-sentence report had not used it. And the judge thought it was better to apply the blue light, even though the pre-sentence judge. And so whatever objection to that, the sentence had not been imposed, whatever objection to that was discussed. And it was over several pages in the sentencing hearing. Well, that is correct. But my... Well, that's not completely correct. It wasn't relied on here in the PSR as what they were dependent on. Well, that's correct. And what I was going to say is... That's what Benton discussed. There is... Well, and I relied on Rule 32 for the same argument. The fact that it's not in the PSR, there is some case law. It was a Fifth Circuit case, Garcia, that the government relied on. I think I cited it first. But it said that, you know, if the defendant actually knows about the facts that are relied on, that's good enough. And they cite to Rule 32D. But what 32D does is just give the timeline for when the defendant is entitled to get the PSR. And when he does, he has 14 days to make objections. And then the PSR in its final form with what they do in South Carolina is an addendum addressing any objections. The defendant and the court and the parties, all the parties get the PSR seven days. So let me ask you this. Is it going to be... What would be different if we sent it back? And then you had noticed that the predicate that the government was... The felony predicate that the government was relying on was the failure to stop for a blue light. And Judge Niemeyer said, well, what would you say in response to that? So is anything going to be any different if we send it back on an absence of notice? You have noticed the felony is... The predicate felony is recognized as one of a failure to stop for a blue light. The in connection with language is applied. And we're right back to the same place that we started. In other words, I just wonder if we're not just spinning our wheels. Because what practical difference does this argument make? Well, I think that Mr. Dix's rights would be better protected because he'd have the chance to fully prepare to respond to that objection. Well, you've had the chance to fully prepare. I think Judge Niemeyer was asking what would he say? Because it's absolutely... You say, well, we recognize that this is not a misdemeanor. It's a felony charge. There's no question that he committed the felony. And if it's a felony and if he committed it, what is there to say? Well, my time has run. Would you like me to respond? Would you mind addressing it on rebuttal? That's fine. Okay. All right. Counsel, we'd be delighted to hear from you. Thank you, Your Honors. Good morning. My name is Lamar Feil and I represent the United States of America. May it please the court. Jason Dix, at both his guilty plea and in the PSR, admitted to all the facts necessary for the court to conclude that he had committed the offense, a fare to stop for a blue light. Additionally, at his sentencing hearing, him, his counsel, the court, and the government had an entire discussion, argument, and presented legal analysis as to whether or not the guideline enhancement for possession of a firearm in connection with felony offense applied. After hearing the arguments of counsel and considering the guidelines and the law, the court, based on sufficient evidence, found that the guideline did apply. Additionally, the fare to stop for blue light charge that the court used to assess that guideline was the offense committed when Mr. Dix engaged in the offense leading to his indictment, and he was arrested by local law enforcement for that offense. All those things taken together show that Mr. Dix had proper notice that this guideline could have applied. He had a chance to argue in court, and the facts and evidence put forth before the court were sufficient for the court to determine that he possessed the firearm. But it wasn't relied on the PSR, right? It was not relied on the PSR, that blue light. No, Your Honor. It was not relied on the PSR. How do you get around the Benton case? Are you familiar with the Benton case? My understanding of the Benton case, Your Honor, is that it was a collateral. It was a collateral tax proceeding. Yes. Is it your position that it doesn't apply on direct appeal? Is there a material distinction that you can make to say that it doesn't apply in a direct appeal situation? Yes, Your Honor. Legal principles. Yes, Your Honor. And specifically, as it applied to Hodge, Hodge specifically must be able to confront the issue that may affect their exposure or criminal sentencing at the time of sentencing. And Mr. Dix was able to do that here. It was later than usual. Benton doesn't apply on direct appeal? I do not think so, Your Honor. Well, it's not the question on direct appeal. It's a question whether it's before or after sentencing. In other words, both Benton and Hodge involved an effort to change the criteria for sentencing post hoc, after the sentencing. Correct, Your Honor. We decided a case called Rumley. I don't know if you know that. We made that distinction. And we noted that if the change is made before sentencing, Hodge doesn't apply. And Hodge was a collateral that came after the sentence had been imposed. But here, the change was made before sentence. And there's nothing magical about finding about the PSR if the court is changing the PSR. The court can look at the PSR and reject any part of it or make a... And I think the big issue that's legitimate is which Hodge relied on and Benton is notice. You have to have notice of this before the sentence is imposed. And in this case, the notice was late. And so, to me, that's a pretty serious problem to give notice late. I think the judge had the authority to go and change the pre-sentence report or whatever. The question, I think, is whether the defendant had the opportunity to respond and prepare for that. That's correct, Your Honor. And I agree with the distinction Your Honor is making as it relates to Hodge. But here, the cause was after the sentencing, the government became aware that a certain predicate might not apply and tried to apply other predicates. In this case, before sentencing, unlike Hodge, unlike Benton, the government presented facts sufficient to support the enhancement. And the defendant had a chance to challenge those facts. Those facts were late in the ordinary course of things. But if you look at the record, there's no disputing the facts here. Mr. Dix clearly failed to stop Prabhu. He had a firearm on the floorboard of his car when he did so. He was on probation. And the court determined that the fact that he was on probation... He had an opportunity to dispute. He wasn't disputing the fact that he had committed the felony, correct? Correct, Your Honor. He was not disputing that at all. And quite frankly, there wasn't much to dispute. What would he have been disputing? The only thing Mr. Dix was disputing in this case is whether or not the enhancement essentially applied. He was essentially making... He agreed to the facts, so he was trying to make an argument that based on the facts before the court, that wasn't in connection with possession of a firearm. But the real question is here, it may be less one of notice than the question of whether this was in connection with another felony offense. Now, was that question argued, the in-connection point? Yes, Your Honor, it was argued. And the court made specific factual findings to determine that it was in connection with... The court adopted the facts in the pre-sentence report that Mr. Dix was traveling over 100 miles per hour, did a U-turn in the cul-de-sac, almost hit a mailbox, almost hit a law enforcement officer, hit another vehicle, and both him and the other occupant... But isn't that the real question in this case as to whether the in-connection with Link is satisfied? Correct, Your Honor. And this court's language says that in connection with me to have some purpose or effect on the crime, it was not accidental or by coincidence. Your argument is that that's a factual matter or at least a matter for the district court to apply and that some deference is due to them and due to the district court. And when you have a firearm with... In order to be tagged with the enhanced penalties that went along with possession of a firearm by a convicted felon. I mean, isn't that the real issue as to whether the application of those words in connection with was valid? I agree with that, Your Honor. And in this case, it wasn't. The court... There's sufficient facts on the record to support not only that he committed the offense of failure to stop a blue light. I mean, you've got somebody speeding over 100 miles an hour, over 100 miles an hour, which I don't know what the speed limit in that zone was, but it wouldn't have approached 100 miles an hour. And the question then becomes, well, why was he doing it? And the district court seemed to me perfectly within its rights to say the whole reason he was doing it was because he, as many, many others knew, of the enhanced penalties that go along with the felon in possession. And he was going to do his darndest to avoid those enhanced penalties. And in the spur of the moment, he decided the best thing to do is to go at this highly excessive rate of speed. I just thought that was really what the case was about, as to whether the district court's discretion to apply that in connection with another felony offense to what was done. And it seems to me this is what the 2K2.1B, 6B, there's so many letters and numbers here, I can't get through it all. But that's the heart of this, isn't it? Yes, Your Honor, I would note one additional thing the court found was that Mr. Dix was on probation when he committed the offense of failure to stop a blue light. And because he was on probation, he was not allowed to carry a firearm in the court, stated that that was an additional motivating factor for him to flee from law enforcement while he had the firearm on his foot. Now, did the defendant have an adequate opportunity and an adequate notice to argue his side of the in connection with application? Did he have an adequate chance to make that argument? Yes, Your Honor. During the sentencing phase, the defendant's attorney made several assertions that there's no reasonable way that you could say that a firearm can be connected with failure to stop a blue light. He was running from police, but the firearm was a separate and distinct defense from that. The court disagreed with his attorney's assertions, and his attorney made a pretty full and complete argument. And I think the reason his attorney did that and did not ask for more time that was suggested earlier because the facts were not in dispute, Your Honor. He agreed to the facts in the PSR. He agreed to the similar facts when he pled guilty. The issue before the court was really whether or not this enhancement applied, and this court said that there was sufficient evidence to say that it did. So the question I'm coming back to is we look at notice on two levels. And this is prior to the sentence. He had noticed that the blue light was going to be the predicate. And he had noticed that the district court was going to apply the in connection with language. And he had the chance to argue that this was an invalid predicate. And he had the chance to argue that the in connection with language was wrongfully applied. So if he had the chance to argue both of those things, hasn't the overall objective of fairness in sentencing been achieved? That's the question I ask myself. I agree, Your Honor, and the COD standard and the Benton standard all stand for the proposition that the deadline, if you will, for these things to be brought up is prior to sentencing. The defendant has a chance prior to sentencing to address these issues. The PSR didn't identify the blue light as a predicate. It did not identify. It did not. It did not. That's the thing. It did not. The PSR did not. That's correct, Your Honor. It did not. Notwithstanding that, you're saying there's notice and that you can sustain that thing in this circuit in the face of Hodge and Benton. Yes, Your Honor. Hodge and Benton were cases where it was not identified in the PSR. And those cases say it needs to be. Hodge and Benton were cases where it was not identified. It was talked about. It was discussed. It was argued about. But the PSR didn't rely on it. Correct. Specifically, Hodge and Benton, the court did not specifically use the prior convictions that the government was trying to assert in determining that those apply to the ACC predicates at sentencing. And subsequent to sentencing, without the defendant having an effective chance to argue those points and present those arguments before the court, then the government came back and said, well, we want to uphold the sentencing because of these additional convictions that the defendant did not have a chance to confront, explain, dispute at sentencing. I think that's a distinguishing factor with Hodge and Benton. In this case, it's exactly the opposite. The defendant had a fulsome discussion with the court, was allowed to confront the evidence, the guidelines, the legal analysis in the court. After hearing from the defendant about that issue, unlike in Hodge, unlike in Benton, was able to determine based on the facts of the law that the guideline did indeed apply. And I think that's what distinguishes it. The court's precedents assert that the time for these things to be handled is prior to the defendant receiving his sentencing and for the court to be able to. Well, now, one question on it with regard to this counsel. Again, for the fairness, where something is not in the PSR, did the defendant, the defendant would have had the opportunity to ask for a continuance. And the defendant would say, I'm sorry, I'm caught off guard by this. I need additional time to develop my arguments and facts, et cetera, et cetera. And use the fact that it wasn't in the PSR as the basis for a motion for continuance, which have been would seem to me to be a perfectly fair motion to to make. But was there any request for an extension of time? There was not in this case, your honor, and that was available to the defense and the government could have moved the extension of time and got to try to get it fixed, couldn't they? The government is also allowed to move for an extension of time. They could have, but the district court opposed a four level sentencing enhancement based upon a felony not identified in the PSR. That's correct, your honor. I mean, I'm just making that statement. That is correct. I guess I shouldn't say period. I shouldn't put a question. That is the question anyway for you. That is correct, your honor. The court could have done that with or without the government raising that issue. And I think I've sufficiently covered notice in the sufficient sufficiency of the evidence. I think the evidence here is not in dispute. I think the court made a clear factual finding based on sufficient facts of the record in the record that were not clearly erroneous. All right. Now, what can we do? What can we do going forward to make sure? Because Judge King certainly raises a valid point. What can we do to make sure that the government turns square corners on this and in the future puts down these puts the predicates and the felony offenses that it's going to rely on in the PSR? I mean, because what you don't I mean, what you don't want is a situation where they can get sloppy about putting the offenses in the PSR and just say, oh, we'll come around to it. We'll come around to it later. I mean, how can we assure ourselves reversing this would be one thing, but it seems to me that that I don't know what would what would be different on on remand. Oftentimes we give warnings in opinions with while stopping short of an outright reversal. But what what can we do to make sure that the government doesn't go sloppy on us? I think the best practice here, Your Honor, if there's any sort of warnings to be given to the government is the notion that PSR government should not only object to information in the PSR that it disagrees with, which we normally consider colloquially when it comes to objections. But if the government feels that there's more information that should be included in the PSR, that they should do that. So that wouldn't necessarily be an objection, I guess, more of a. I guess you can call it an objection, but the in this case, there's less of an issue because Mr. Prime of the blue light by local law enforcement, he was in possession of the firearm. But if we remanded this case, is the result likely to be any different at all or is it just going to be going to arrive at the very same place? Is this just a hoop jump or is there a chance in your view that there would be a different outcome in terms of the application of the two K two point one enhancement? What's your thought about that with the facts of this case that were stipulated to by the defendant at his guilty plea and the guidelines and sentencing? And here before this court today, I don't think the application of the guideline would be any different on remand. The facts are very clear in this case. And the court made a reason. Your argument is that wouldn't wouldn't make any difference. I used to be a U.S. attorney and a U.S. attorney and lawyer to several cases, but I can remember when I was the prosecutor, defense lawyers and maybe the judge. I mean, to me that we were relying too much on the clearly guilty rule. That was the fallback position the government would take, according to the defense lawyers or maybe even the court. On back to the clearly guilty come out the same way. He was clearly guilty. That seems to be what sort of what I'm hearing from you. The bottom line is it's it's a clearly guilty for this court district court opposed to four level sentencing has enhanced, but based on the felony not identified in the PSR. Period or question, but he was clearly guilty anyway. And there were other felonies and everything's all right. I'm going to use to the extent that the clearly guilty rule applies in this case. He's only fairly guilty of fair to stop for a blue light because the evidence show that he's clearly guilty. And he admitted to those fans, those facts at his guilty plea and at the end of the PSR. And those facts are not very well in dispute by any party, the defense, the prosecution or the court. So in this case, I would say that he is clearly guilty. The issue in this case is whether or not the guideline applied. That was really what the court was determining. And in this case, based on the facts in the record, the court made the right determination in the court. Based on the sports precedent could have made that determination outside of the government's argument. With that, I see that amount of time. And unless there are any more questions, we would rest on our boots. We thank you very much, counsel. Thank you. And now we'd like to hear from the appellate in rebuttal. Thank you, Your Honor. Mr. Dix would obviously disagree that the outcome would not be different if it was remanded. And that was the question that I was left with on my opening. And I would say pages 12 to 15 of the brief and 68 of the reply brief site to extensive law, making the argument about why the in connection portion was not proved. I mean, the only thing the government even put in their brief about that was he was much more likely to fail to stop for a blue light because he had a gun in the car. But no connection was made. That's just speculation. And and that would be what would be considered on remand is whether or not that part of the requirement, whether the gun facilitated it, whether that was met at all because failure to stop for a blue light in South Carolina, all that's required. Did you did you argue that very thing before Judge Child? Well, the the council did the best he could when he was when the course changed and all of a sudden it was a different another felony. He did do the best that he could, but he couldn't cite any of this law because he didn't have it available. Did you ask for additional time or continuance? No, I don't disagree. He did not ask for additional time, but I would say that what was overlooked in rule 32 is that actual knowledge isn't enough in what's cited in rule 32 D. 32. I requires I mean, allows late objections, but it has to be with good cause. And none of that was ever shown why there was good cause for not saying that all of the state charges arising from this particular conduct couldn't have been used for the enhancement. So if if we were to remain and you would concede that the whole question of the application of the two K two point one enhancement was still we wouldn't be saying that there was any kind of error. And the application of the enhancement might still might still very well be proper, correct? Well, if it was remanded and a new PSR was issued with the basis for the four level enhancement identified, Mr. Dix would have a full opportunity to argue at sentencing why it didn't apply. I mean, even the district court's findings in here, which I would disagree with the government, they tried to couch it as a factual argument. I say it's a legal argument because in connection with means facilitate, it can't just be by coincidence or accident. And I think Mr. Dix has a good argument that the gun was just in the car and his failure to stop for a blue light was complete when he didn't stop for the police. And other reasons. Did you make that? Did you make that argument earlier before the district court? You would have to. That would be your argument. When the government raised the issue about this additional felony, like I said, counsel did the best he could. Switching gears using the argument he had prepared related to the stolen gun. Counsel, counsel, please. I'm sorry. Maybe because of the audio transmission, you couldn't understand me. And that's perfectly understandable. But you would have made what you just said, you would have made that argument before the district court, would you not? That was your best argument. About the fact that the firearm was on the floorboard was just incidental and that it didn't really factor into his. Right, I believe the argument was more in more general terms, like I said, the citations in the brief. Obviously, I had the benefit of being able to research and make the argument about why it wasn't in connection. And I would say even the district court holdings, what they said was that him having the gun, knowing he was on probation is why he didn't stop for the blue light. But that's not the same as how it facilitated failure to stop for blue light. Because in South Carolina, failure to stop for blue light, even if you don't hear the sirens or see the blue light, you can be held accountable for that offense. So it was never made clear by the government. Like I said, even in the briefing, all that was said was, well, he's just as likely he would have stopped if he didn't have the gun in the car. Well, he was still on probation. He was on drugs. If you want to assume, why was he running? Why wouldn't he stop? Well, he had a gun in the car. He didn't want to be caught with the gun in the car. Right, and that's not the same as the gun facilitated his failure to stop. I understand that, but the fact that he didn't stop, it made some sense that perhaps he didn't stop for that reason. But he also noted at sentencing that he has a long-standing drug problem, and he was high at the time he was driving. And he was on probation and thought he had probation warrants. So there are a lot of reasons he wouldn't stop, but that doesn't mean that any of those reasons, I mean, that the gun facilitated it in the way it's described legally. Like, did it make it easier for him not to stop because he had the gun in the car? And I did cite in the reply brief, and I apologize, I'm over time, so there's an 11th Circuit case in the reply brief that gives a more thorough connection to those two things. Thank you, Your Honors. We thank you.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Robert B. King